IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION
Civil Action No.:

| | |
|---|---|
| ASHTON THOMPSON,           )<br>                             )<br>    Plaintiff,                )<br>        v.                   )<br>                             )<br>ECI MANAGEMENT LLC.          )<br>                             )<br>    Defendant.               )<br>                             ) | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## I. INTRODUCTION

1. Ashton Thompson[1] ("Plaintiff" or "Ms. Thompson") began her time with ECI Management LLC ("Defendant" or "Company") as a Community Manager on or around July 7, 2021. Unbeknownst to Ms. Thompson, her days at the Company were numbered after she announced she was pregnant. When Ms. Thompson disclosed her pregnancy in mid-September, things quickly changed. Her boss quickly made a pregnancy-biased statement and said the Company shouldn't have hired her with a pre-approved vacation on the horizon, even though this wasn't an issue in the lead-up to hiring.

2. A pregnancy-related episode meant a trip to the hospital and a few hours off work on or around October 1, 2021. That same day, the Company issued Ms. Thompson a retaliatory write-up. After this and an unprofessional phone call with her supervisor, Ms. Thompson

---

[1] Since filing her EEOC Charge, Ms. Thompson got married and changed her last name from Munoz to Thompson.

made a pregnancy discrimination complaint to HR on or around October 5, 2021. A few days later, the Company illegally fired Ms. Thompson in retaliation for engaging in protected activity or on the basis of her pregnancy.

3. Ms. Thompson now turns to this court to be made whole for her harms and losses. Plaintiff brings this action against the Company for violations of Title VII of the Civil Rights Act of 1964 (specifically, the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k)).

## II. PARTIES, JURISDICTION, AND VENUE

4. ECI Management LLC is a Georgia corporation with its principal office located at 2100 Powers Ferry Road SE, Suite 200, Atlanta, GA and its South Carolina registered agent at Corporation Service Company, 508 Meeting Street, West Columbia, South Carolina 29169.

5. Plaintiff worked for Defendant at its 503 E. Stone Ave., Greenville, SC 29601 location.

6. Venue is proper in the District of South Carolina, Greenville Division, because: Defendant has a substantial presence in Greenville, South Carolina and conducts a great deal of business in Greenville. At all relevant times, Plaintiff worked out of the 503 E. Stone Ave., Greenville, SC 29601 location and the facts and circumstances of the case arise in Greenville, South Carolina. But for Defendant's illegal conduct, Plaintiff would have continued working in Greenville, South Carolina.

## III. FACTUAL STATEMENT

7. Ms. Thompson began her career with the Company in or around July 2021. It hired her as a Community Manager. Ms. Thompson had significant experience in similar roles, and she was ready to get started at the Company and help it succeed. But everything would soon

change at the Company after Ms. Thompson learned that she was pregnant.

8. On or around September 14, 2021, Ms. Thompson told Director of Operations Sharon Donley that she was pregnant. Donley seemed less than happy. She began making comments about Ms. Thompson's assistant manager and asked if she was pregnant, too, which Ms. Thompson understandably found inappropriate. Donley asked Ms. Thompson not to repeat her comments because she knew they were inappropriately biased.

9. On or around September 23, 2021, Ms. Thompson had a video call with Donley regarding the concerns she had about feeling attacked by multiple employees. Donley told Ms. Thompson that "we [the Company] should have never hired you with that long of a vacation coming up." Ms. Thompson needing time away from work was suddenly a problem.

10. Ms. Thompson had been incredibly transparent with the Company about the pre-planned vacation before it hired her. The Company was explicit in assuring her it was not an issue. It only became an issue after Ms. Thompson announced her pregnancy.

11. On or around September 24, 2021, the Company's computer system was hacked by a third party. The hack disrupted work at the Company's properties until on or around September 30, 2021.

12. On or around October 1, 2021, Ms. Thompson experienced a health scare involving her pregnancy and texted Donley that she needed to go to the hospital. Ms. Thompson explained that she would return to work after her doctor's appointment to make sure she was caught up on work and would even work the weekend to finish assignments that had been unable to complete due to her vacation and the computer hack outage.

13. A few days later, Donley called Ms. Thompson about a teams meeting for later that

day. On the teams meeting, Donley and another employee, Emily Mask, issued Ms. Thompson a write-up. They berated Ms. Thompson, picking at her for nearly 45 minutes. This write-up had very little to do with Ms. Thompson's actual performance. It was in retaliation for Ms. Thompson being pregnant and needing a leave related to her pregnancy.

14. The write-up was dripping with bias. It included negative marks for things the Company knew were not true. For example, it suggested unscheduled absences were a problem for Ms. Thompson. However, Ms. Thompson's only absences were the pre-approved vacation and time she spent quarantining under the Company's Covid-19 policy. The write-up said Ms. Thompson failed to hold staff meetings, but she held weekly staff meetings and the Company knew it.

15. On or about October 5, 2021, Ms. Thompson called Donley to explain a computer software glitch that caused an error on a resident lease. She also wanted approval on next steps to resolve the situation. Donley responded by yelling and cursing at Ms. Thompson, blaming her for the technical issue. Following this inappropriate phone conversion with Donley, Ms. Thompson reached out to Halie Myer in Human Resources to voice her concerns about being targeted by other employees, especially Donley. Ms. Thompson told Myer she felt discriminated against on the basis of her pregnancy and specifically outlined that everything changed after she announced her pregnancy. Ms. Thompson specified that the PIP and the alleged underlying biases were discriminatory. On this call with HR that lasted nearly an hour, Ms. Thompson also explained the technical issue that was not possible to recreate because employees were unable to edit leases. Myer promised Ms. Thompson she would investigate the discrimination and be in touch with her within a couple of days.

16. Less than a week later, on or around October 11, 2021, Donley came into Ms. Thompson's office unannounced, shut the door, and called in another employee to be a witness. Donley said the Company had decided to part ways with Ms. Thompson.

17. As grounds for the termination, Donley blamed the computer glitch as the reason. She did not cite other concerns, and instead tied the termination to the computer glitch only. There was no termination letter or documentation provided to Ms. Thompson, and after asking Halie Myer in HR for the paperwork, on October 18, 2021, she was told that there was no documentation related to her termination to provide. It was only much later that the company produced not one, but two, termination letters, unsigned, citing different untrue reasons for the termination. These alleged reasons were never mentioned to Ms. Thompson during her employment with the Company. The Company intended to fire Ms. Thompson from the moment she announced her pregnancy.

18. Ms. Thompson was not the only Company employee to experience issues with the new computer system. However, she was the only one who was pregnant and complained about discrimination at the time, and that's why the Company actually fired her.

19. The Company was not simply mistaken or misguided on Ms. Thompson's termination —it acted out of prohibited retaliatory and discriminatory intent.

## IV. LEGAL CLAIMS

### Count I

*(Violation of Title VII of the Civil Rights Act of 1964)*

20. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

21. Through the Pregnancy Discrimination Act, Title VII's "because of sex" or "on the basis of sex" terms include "because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions." 42 U.S.C.. § 2000e(k).

22. Defendant employs, and at all relevant times has employed, more than 15 employees.

23. Plaintiff is a woman and was pregnant during her time of employment.

24. Defendant terminated Plaintiff soon after she announced her pregnancy to the Company.

25. Defendant terminated Plaintiff soon after she announced a pregnancy-related medical condition to the Company that required her to miss a morning of work.

26. Defendant terminated Plaintiff soon after she reported pregnancy discrimination.

27. Defendant violated Title VII by terminating Plaintiff on the basis of her pregnancy, childbirth, or related medical conditions.

28. Defendant also violated Title VII by failing to provide Plaintiff equal treatment and terminating her on the basis of her Pregnancy Discrimination Act protected status.

29. Defendant also violated Title VII by terminating Plaintiff in retaliation for her protected activity.

30. As an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, dimunition in expected earnings, emotional distress, anxiety, humiliation, expenses, reputational harm, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

31. Defendant's actions were done maliciously, willfully or wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages in an amount to be determined at trial.

32. Defendant's officers, directors, and managers participated in and condoned the malicious, willful, wanton, and reckless conduct alleged above..

## JURY TRIAL DEMANDED

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment against Defendant and order Defendant to pay Plaintiff damages for all harms and losses;

2. Award Plaintiff punitive damages;

3. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action.

4. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

5. Grant Plaintiff a trial of this matter by a jury.

This the 11th day of May 2023.

/s/ Sean F. Herrmann
Sean F. Herrmann
South Carolina Bar No. 100940
FID 12346
Herrmann & Murphy, PLLC
220 North Main Street
Suite 500
Greenville, South Carolina 29601
Phone: 864-516-7526
Fax: 704-940-6407
Email: sean@herrmannmurphy.com

*Attorney for Plaintiff*

8